**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TOWN OF HARRIETSTOWN,**

                                        **Plaintiff and**
                                        **Counter-Defendant,**

         **vs.**                                                    **8:24-CV-1184**
                                                                    **(MAD/DJS)**

**WESTCHESTER FIRE INSURANCE COMPANY,**
**and ACE PROPERTY AND CASUALTY INSURANCE**
**COMPANY,**

                                        **Defendants and**
                                        **Counter-Claimants.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**RIGANO LLC**                            **NICHOLAS RIGANO, ESQ.**
538 Broad Hollow Road - Suite 301
Melville, New York 11747
Attorney for Plaintiff and Counter-Defendant

**WHITE, WILLIAMS LAW FIRM**             **ROBERT F. WALSH, ESQ.**
1650 Market Street
One Liberty Place
Suite 1800
Philadelphia, Pennsylvania 19103
Attorney for Defendants and Counter-Claimants

**WHITE AND WILLIAMS**                    **LUCIANA LALANDA, ESQ.**
One Gateway Center - Suite 910
Newark, New Jersey 07102
Attorney for Defendants and Counter-Claimants

**COHN BAUGHMAN**                         **MICHAEL J. BAUGHMAN, ESQ.**
525 W. Monroe Street - Suite 1500
Chicago, Illinois 60661
Attorney for Defendants and Counter-Claimants


**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On September 27, 2024, Plaintiff Town of Harrietstown ("Plaintiff" or the "Town") commenced this action by filing of a complaint against Defendant insurance companies Westchester Fire Insurance Company ("Westchester"), ACE Property and Casualty Insurance Company ("ACE"), and Brandywine Holdings Corporation ("Brandywine"), alleging a duty defend, breach of contract, and bad faith. *See* Dkt. No. 1.  On October 31, 2024, Plaintiff filed an amended complaint which did not name Brandywine as a defendant. *See* Dkt. No. 11.  Plaintiff realleged its duty to defend and breach of contract claims against Westchester and ACE (collectively, where appropriate, "Defendants" or "Insurers"). *See id.*  Specifically, Plaintiff alleges Insurers owe a duty to defend Plaintiff against a claim brought by the New York State Department of Environmental Conservation ("NYSDEC"). *See id.*  On December 4, 2024, Defendants answered Plaintiff's amended complaint and filed a counterclaim, seeking a declaratory judgment that Defendants do not owe Plaintiff a duty to defend. *See* Dkt. No. 21. Plaintiff answered Defendants' counterclaim. *See* Dkt. No. 26.

On February 7, 2025, Defendants moved for summary judgment. *See* Dkt. No. 27. Plaintiff cross-moved for summary judgment on March 14, 2025. *See* Dkt. Nos. 32, 33.  Both parties responded in opposition to the other party's motion and replied in support of their own motion. *See* Dkt. Nos. 34, 37.

For the reasons set forth below, Defendants' motion is and granted in part and denied in part, and Plaintiff's cross-motion is granted in part and denied in part.

## II. BACKGROUND[1]

The Town owns and operates Adirondack Regional Airport (the "Airport"), which is located in Lake Clear, New York. *See* Dkt. No. 32-3 at ¶ 12. The Airport is a "Part 139" airport, which is mandated by the FAA to use aqueous film-forming foam ("AFFF"). *See* Dkt. No. 34-1 at ¶¶ 1-2. AFFF is known to contain Per- and polyfluoroalkyl substances ("PFAS"), including Perfluorooctane sulfonic acid ("PFOS"). PFAS and PFOS are pollutants. *See id.* at ¶¶ 4-5. AFFF has been used as a firefighting foam. *See id.* at ¶ 24. It has been used at the Airport. *See id.* at ¶ 25. AFFF can cause PFAS contamination, including PFOS contamination of soil and groundwater. *See id.* at ¶ 26.

Between June 2000 and June 2003, Defendant Westchester insured the Town and between June 2003 and January 2021, Defendant ACE insured the Town. *See* Dkt. No. 32-3 at ¶¶ 1-2. The insurance policies contain the following relevant provisions:

### A. Noise and pollution and other perils.

1. This policy does not cover claims directly or indirectly occasioned by, happening through or in consequence of:

(a) noise (whether audible to the human ear or not), vibration, sonic boom and any phenomena associated therewith,

(b) pollution and contamination of any kind whatsoever,

(c) electrical and electromagnetic interference,

(d) interference with the use of property; unless caused by or resulting in a crash fire explosion or

---

[1] The parties submitted statements of material facts in support of their respective motions and responded to the opposing parties' statements of material facts as required by this Court's Local Rules. *See* Dkt. Nos. 27-1, 32-2, 32-3, 34-1. The Court derives the factual background from those filings.

collision or a recorded in-flight emergency causing abnormal aircraft operation.

unless caused by or resulting in a crash fire explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation.

2. With respect to any provision in the policy concerning our duty to investigate or defend claims, such provision shall not apply and we shall not be required to defend:

(a) claims excluded by Paragraph 1; or

(b) a claim or claims covered by the policy when combined with any claims excluded by Paragraph 1 (referred to below as "Combined Claims").

3. In respect of any Combined Claims, we shall (subject to proof of loss and the LIMITS OF INSURANCE) reimburse you for that portion of the following items which may be allocated to the claims covered by the policy:

(i) damages awarded against any insured; and

(ii) defense fees and expenses incurred by any insured. . . .

*Id.* at ¶¶ 4-5, 8-10; *see also* Dkt. No. 27-3.  The Court will refer to these parts of the Polices as the Pollution Exclusion and "Combined Claims" Provision.

On November 5, 2020, the Town received a Potentially Responsible Party ("PRP") letter from the New York State Department of Environmental Conservation ("NYSDEC") regarding contamination at the Airport.  *See id.* at ¶ 13.  The letter stated that NYSDEC "documented a release of 'hazardous substances' as defined by the Comprehensive Environmental Response, Compensation and Liability Act, . . . and/or the presence of 'hazardous wastes' as defined in the New York State Environmental Conservation Law . . . at or near property identified as the Adirondack Regional Airport Site . . . ."  *Id.* at ¶ 14 (quoting Dkt. No. 27-5 at 2).  The letter did

not identify the "hazardous wastes." *Id.* at ¶ 15.   "[T]he Site was classified as a Class '2' site and placed on the Registry of Inactive Hazardous Waste Disposal Sites . . . ." *Id.* (quoting Dkt. No. 27-5 at 2).  The letter determined that the Town was potentially responsible for the contamination and requested that the Town "implement or finance a remedial program in connection with the contamination at or emanating from the Site." Dkt. No. 27-5 at 3.  NYSDEC stated that "[t]he agreement to undertake or finance a remedial program at the Site must be memorialized in an administrative consent order . . . ." *Id.*  The letter also advised that "[i]n the event [the Town did] not enter into a Consent Order within 120 days of date of this letter, [NYSDEC] may authorize a contractor to proceed with implementing work plans to perform the investigation and/or remediation of contamination at or emanating from the Site." *Id.*  "The State's costs incurred relative to such Site contamination, as well as any past costs and interest, will be recoverable by the State from the responsible parties . . . ." *Id.*  The Town was advised to contact NYSDEC "to discuss whether [it] intend[ed] to enter into a Consent Order to implement a remedial program for the Site, or whether [it] intend[ed] to remain liable for costs incurred by NYSDEC for the remedial program and selected remedy." *Id.* at 4.

The "[l]etter did not refer to any alleged PFAS contamination at the Site caused by or resulting in a crash fire explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation." Dkt. No. 32-3 at ¶ 18.  In October 2020, NYSDEC issued a Superfund Site Classification Notice ("Notice") which stated as follows:

> [The Airport] presents a significant threat to public health and/or
> the environment for the following reason(s): • Per- and
> polyfluoralkyl substances (PFAS) have been detected at elevated
> levels in groundwater and surface water at the airport with
> perfluorooctanoic acid (PFOA) greater than 18,000 parts per trillion
> (ppt) and perfluorooctane sulfonic acid (PFOS) greater than 950
> ppt.

> Actions are needed to identify the source of this contamination, to
> define the nature and extent of contamination in groundwater and
> other environmental media, and to evaluate and address potential
> exposures.

*Id.* at ¶ 19 (quoting Dkt. No. 27-6 at 2) (spacing added).  Defendants contend the Notice is

inaccurate because "PFOS was detected at 18,000 ppt, not PFOA."  *Id.*  The parties agree that the

"Notice did not refer to any alleged PFAS contamination at the Site caused by or resulting in a

crash fire explosion or collision or a recorded in-flight emergency causing abnormal aircraft

operation."  *Id.* at ¶ 20.

The Town emailed its insurance agency, Northern Insuring Agency, Inc., on November

11, 2020, about the PRP letter and Notice, as well as "an Amended Complaint filed in *State of

New York v. 3M Co., et al.*, U.S. District Court, District of South Carolina, Charleston District,

No. 2:18-mn-2873" (the "3M suit").  *Id.* at ¶ 21.  The Town "requested that Northern Insuring

submit the documents to the Town's and the Adirondack Regional Airport's 'relevant insurance

policies for determination of whether there is coverage for the situation. . . .'"  *Id.* (quoting Dkt.

No. 27-7 at 2).

"On November 12, 2020, Northern Insuring submitted a . . . Liability Notice of

Occurrence/Claim form" to "Chubb Group Of Ins Companies," referencing an insurance policy.

*Id.* at ¶ 22.  Northern Insuring's submission "attach[ed] the documents provided by the Town, and

providing the following description of the alleged occurrence: 'Claimant [NYSDEC] alleges

insured has been identified as a superfund site.  Firefighting foam that has been used by insured

for training (sic) purposes, has been identified as hazardous waste and a significant threat to

public health and/or the environment.  Insured is responsible for expense of remediation.'"  Dkt.

No. 32-3 at ¶ 22 (quoting Dkt. No. 27-8 at 2).

6

Northern Insuring's Notice of Occurrence/Claim "did not refer to any alleged PFAS contamination at the Site caused by or resulting in a crash fire explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation." *Id.* at ¶ 23. As part of the Notice, Northern Insuring included the "Amended Complaint from [the 3M suit], alleging: 'AFFF products containing PFOA/S have been stored and/or used at this site . . . from approximately the 1960s through at least 2017. Upon information and belief, AFFF containing PFOA/S and DuPont/Chemours' PFOA/S feedstock was discharged into the environment at or from this site in connection with activities such as firefighting and firefighting training exercises.'" *Id.* at ¶ 24 (quoting Dkt. No. 27-9).

ACE acknowledged receipt of Northern Insuring's Notice on November 18, 2020. *See id.* at ¶ 25. ACE's acknowledgment stated, in part, as follows:

> Please also be advised that ACE . . . fully reserves all of its rights under any and all alleged policies. Neither this letter, nor any action taken by or on behalf of [ACE] in searching for the alleged policies or investigating this matter, shall operate as a waiver of any its rights under the provisions of any policies. No action taken by us will constitute a waiver of any of the rights of any alleged policy issued by or managed by any Chubb company.

Dkt. No. 27-10 at 3; *see also* Dkt. No. 32-3 at ¶ 26.

To support multiple assertions in their statement of material facts, Defendants rely on the declaration of Stacy Cohen, a Claims Director with the Brandywine. *See* Dkt. No. 32-3 at ¶¶ 27-29. Plaintiff challenges Defendants' reliance on Ms. Cohen's declaration because it "sets forth no foundation for her knowledge for events that occurred on this matter in 2021." *Id.* To support its argument, Plaintiff quotes an e-mail from Ms. Cohen in January 2024, wherein she stated that there had been "changes at Brandywine with respect to personnel assigned to this matter. As

such, we are all endeavoring to get up to speed with a better understanding of the claim history . .

. ." *Id.* (quoting Dkt. No. 27-28 at 2).

In her sworn and signed declaration, dated February 7, 2025, Ms. Cohen attested that she

made the declaration based "on personal knowledge and information provided to [her] in

connection with [her] duties." Dkt. No. 27-4 at ¶ 2.  She noted her role as Claims Director with

Brandywine and explained that she is responsible for handling the Town's "claim for insurance

coverage under certain Airport Owners and Operators General Liability policies . . . issued by

Westchester Fire Insurance Company . . . and ACE . . .with respect to the Town's liability for

environmental contamination at the Adirondack Regional Airport in Lake Clear, New York (the

"Town's Coverage Claim")." *Id.* at ¶ 1.  She noted that as part of her job, she has access to and is

familiar with the Policies and "the claim file materials." *Id.* at ¶ 3.

The Court takes no issue with Defendants' reliance on Ms. Cohen's declaration because

she attested to her familiarity with the Town's claim through her review of the claim file and her

work on the case and Plaintiff's assertion that she did not lay foundation for her knowledge is

meritless.

As to the Town's insurance claim, ACE retained, at its own expense, an insurance policy

archivist.  *See id.* at ¶ 30.  Defendant Insurers requested that the Town provide them with the

following:

> documentation of the purchase and usage history of AFFF; a
> complete history of any fires, crashes, explosions, collisions and
> recorded in-flight emergencies at the Airport/Site; specific evidence
> of actual discharges of AFFF at the Airport/Site and the
> circumstances of such discharges; documentation relative to how
> and when pollutants were allegedly discharged at the Airport/Site,
> and documentation relative to how and when the alleged
> contamination occurred; and documentation received from or
> directed to any government agency or authority relative to the

> Airport/Site, including, but not limited to the Town's/Airport's
> responses to a 2016/2017 NYSDEC Suppression Foam Usage
> Survey.

*Id.* at ¶ 31.  On January 29, 2021, Insurers located additional policies dating back to 2007 and e-mailed the Town.  *See id.* at ¶ 32.  The "email stated that ACE P&C 'fully reserves all of its rights under any and all policies.'"  *Id.* at ¶ 34 (quoting Dkt. No. 27-11 at 3).  More specifically, the e-mail noted, *inter alia*, as follows:

> Neither this letter, nor any action taken by or on behalf of ACE in
> investigating this matter, shall operate as a waiver of any its rights
> under the provisions of any policies.  No action taken by us will
> constitute a waiver of any of the rights of any alleged policy issued
> by or managed by any Chubb company.

Dkt. No. 27-11 at 3.

On February 1, 2021, the Town filed a state court lawsuit against AFFF manufacturers.  *See* Dkt. No. 32-3 at ¶ 36.  Insurers contend the Town's complaint "claim[s] that AFFF storage caused contamination at the Airport."  *Id.*  The Town clarifies that its lawsuit also alleges AFFF was "used for actual firefighting/crash response and firefighting training drills for decades."  Dkt. No. 27-14 at 20, ¶ 138; *see also* Dkt. No. 32-3 at ¶¶ 36-38.

On February 12, 2021, the Town responded to Insurers' document requests.  *See* Dkt. No. 32-3 at ¶¶ 39-40.  As part of its response, the Town includes "the Airport's certified responses to a 2016/2017 NYSDEC Class B Suppression Foam Usage Survey."  *Id.* at ¶ 39.  As part of the survey, the Airport was asked whether Class B fire suppression foam was stored or used at the facility at that time, whether it had "ever been stored and/or used at the Facility," whether it had "ever been used for training purposes," and whether it had "ever been used for firefighting or other emergency response purposes."  Dkt. No. 27-13 at 2-3.  The Airport Manager who completed the form answered, "Yes," "Yes," "Yes," and "Uknown," respectively.  *Id.*  As for

using the foam for firefighting or emergency purposes, the Airport Manager indicated there was "[n]o known use for emergency response." *Id.* at 3.  The Town notes in response to the Insurers' reliance on that answer that "the Airport Director signed the survey based on this knowledge.  He started working at the Airport as of 2008 and had no knowledge before then. . . .  Also attached to Town's February 21, 2021[,] letter were several plane crash reports and newspaper articles showing crashes that occurred at the airport some of which include reference to use of foam." Dkt. No. 32-3 at ¶ 42.

The parties agree that the Town submitted to the Insurers "(1) a news article about a 1997 emergency landing of a United Arab Emirates . . . military plane; (2) a NTSB Report about a 1998 Beech aircraft crash; and (3) a 2007 AOPA Report about an April 2007 Beech aircraft crash." *Id.* at ¶ 44.  On March 23, 2021, Insurers requested "specific evidence . . . of actual discharge of AFFF at the Airport and the circumstance of such discharges," including "any other reports in [the Town's] possession relative to any other incidents, crashes, fires, etc. at the Airport." *Id.* at ¶ 46. In response, the Town explained that it "would often document instances where it would test equipment and/or train with AFFF.  However, due to the nature of emergency response, Town would not document use of AFFF in response to plane crashes.  Sampling under the remedial investigation, which falls under the insurer's duty to defend, will confirm AFFF use in response to plane crashes and otherwise." Dkt. No. 27-18 at 3.  It also noted it was "continuing to review its records and has requested records from third parties." *Id.*  On May 7, 2021, the Town e-mailed Insurers, stating as follows:

> I just received the attached proposed consent order from NYSDEC today.  I intend to recommend that Town proceeds with execution subject to minor comments.  Note that NYSDEC states in paragraph 2 on page 1 that "Contamination at the Site appears to be the result

> of aqueous film forming foam (AFFF) spilled or used for training, **responding to plane crashes**, and/or for other purposes at the Site."

Dkt. No. 27-19 at 2.

On June 25, 2021, Insurers sent the Town a letter explaining its coverage determination. *See* Dkt. No. 32-3 at ¶ 50 (citing Dkt. No. 27-20). In that letter, Insurers agreed to "provide for the defendant of [the] Town . . . subject to a full reservation of rights." Dkt. No. 27-20 at 2. Insurers stated its defense of the Town was "subject to a full reservation of rights, including reservation of rights specifically set forth below. ACE's acknowledgment of a duty to defend with respect to the NYDEC demand is not intended to waive any of ACE's rights with respect to contesting or denying coverage for costs attributable to the NYDEC demand." *Id.* at 4. Insurers noted that it "reserve[d] the right to withdraw from the defense if it is determined there is no coverage under the above-referenced policies. Second, we will not pay for any costs not related specifically to the defense of this claim." *Id.* They also "reserve[d] the right to obtain reimbursement of any defense costs we have advanced where it is determined that there is no coverage under the policies for losses associated with this claim." *Id.* at 5. In their letter, Insurers copied the Pollution Exclusion language, including the "Combined Claims" clause. *See id.* at 6-7. It did not include the "Your product" exclusion. *See id.*

Insurers stated that "[i]f it is ultimately determined that the claims asserted by the NYSDEC fall within the above exclusion, coverage is precluded." *Id.* at 7. They then listed numerous policies under which they "hereby reserve any and all rights which we may have," including, "[w]hether the policies contain a pollution exclusion and if so if this claim falls within it." *Id.*

Based on a Common Interest Agreement (the "Agreement") executed on September 27, 2021, Insurers assert that "[t]he Town accepted ACE P&C's offer of a defense under a reservation of rights." Dkt. No. 32-3 at ¶ 55. The Town denies that it "accept[ed] any offer." *Id.* The Town quotes portions of the Agreement which states as follows:

> This Agreement is not intended to be nor shall it be construed as an admission of any fact (including those set forth in the above whereas clauses), the existence of a policy or a policy interpretation, or as an admission by any Party of any duties, rights, or obligations arising under any insurance policies and/or otherwise. This Agreement shall not be used in any court or dispute resolution proceeding to create, prove, or interpret any rights or obligations under any insurance policies and/or otherwise.
>
> The Parties agree that no part of this Agreement may be used in any proceeding as evidence of their respective rights, duties or obligations under the ACE Policies and/or any other policy of insurance. Nothing in this Paragraph, however, shall be construed to prevent any Party from using this Agreement in any court or dispute resolution proceeding in an action to enforce rights and/or seek remedies under this Agreement.

*Id.* (quoting Dkt. No. 27-21 at 12). To the extent Insurers rely on the Common Interest Agreement to assert various statements of fact, the Town denies the facts and cites to the quoted provisions. *See id.* at ¶¶ 58-64. The Agreement also contains a reservation of rights provision related to "[e]ach [p]arty." Dkt. No. 31 at 8.

The parties agree that on September 27, 2021, "[t]he Town entered into a final Order on Consent and Administrative Settlement with NYSDEC relative to the Site." Dkt. No. 32-3 at ¶ 65. The Consent Order states that "Contamination at the Site appears to be the result of aqueous film-forming foam (AFFF) spilled or used for training, responding to plane crashes, and/or for other purposes at the Site." *Id.* at ¶ 66 (quoting Dkt. No. 27-22). "The Records Search Report filed with respect to the NYSDEC claim states that the contamination 'appears to be the result of

the use, storage and disposal of AFFF at the airport.'" *Id.* at ¶ 67 (quotation omitted). In an environmental consultant's report from July 2022, it was noted that there were several potential sources for the alleged contamination at the Airport including the storage of AFFF and the use of AFFF in response to plane crashes. *See id.* at ¶ 68 (citing Dkt. No. 27-24 at 16-17). A July 2022 NYSDEC fact sheet stated that "[p]ast investigations in the area have determined that per- and polyfluoroalkyl substances (PFAS) are present in the site's subsurface from aqueous film-forming foam, which contained PFAS, which may have been used in response to plane crashes, for training and/or for other purposes." *Id.* at ¶ 69 (quoting Dkt. No. 27-25 at 3).

On March 15, 2024, Insurers sent the Town a letter which quoted the Pollution Exclusion, including the "Combined Claims" language and explained that "[f]or any damages to fall within loss coverage, the insured bears the burden to prove that the damages were 'caused by . . . a crash fire explosion or a recorded in-flight emergency causing abnormal aircraft operation.'" Dkt. No. 27-29 at 3. Insurers stated that "[t]o date no such proofs have been adduced as to the contaminated potable wells. Moreover, to the extent that there may be multiple causes of any contamination such that the matter constitutes a 'Combined Claim' within the meaning of the above policy language, any coverage will be in the form of reimbursement of expenses, subject to proof of loss and limits of insurance." *Id.* On March 25, 2024, Insurers sent another letter to the Town explaining that they "made deductions for certain costs unrelated to alleged PFAS contamination associated with the use of AFFF and thereby barred from coverage by the pollution exclusion." Dkt. No. 27-30 at 2. Insurers again quoted the Policies' Pollution Exclusion and stated that "[if the Town has] specific proofs that the excluded costs related to pollution or contamination caused by or resulting in a crash fire explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation, please provide and we will consider." *Id.* at 3.

The Town responded to Insurers and objected to the deductions.  *See* Dkt. No. 32-3 at ¶ 75.

Insurers responded to the Town's objections by quoting the Pollution Exclusion and stating as

follows:

> As previously stated in my March 25, 2024[,] letter, if you have
> specific proofs that the deducted expenses relate to pollution or
> contamination caused by or directly resulting from a crash fire
> explosion or collision or a recorded in-flight emergency causing
> abnormal aircraft operation, please provide same.  Coverage under
> the limited exception to the pollution exclusion requires precise
> proof of loss submissions that address the requisite causative
> element.
>
> Westchester Fire and ACE continue to reserve all rights in this
> matter.

Dkt. No. 27-31 at 3.

"By letter dated July 23, 2024, the Insurers advised the Town that they would no

longer defend the Town for the NYSDEC claim."  Dkt. No. 32-3 at ¶ 77.  In their letter, Insurers

"wr[o]te to supplement their prior coverage determination."  Dkt. No. 27-34 at 2.  They quoted the

Pollution Exclusion and explained as follows:

> Under Section "1" of the exclusion, all claims for "pollution or
> contamination of any kind whatsoever" are excluded from coverage,
> except for pollution or contamination caused by a plane crash, fire,
> explosion, collision, or in-flight emergency.
>
> Section "2" of the exclusion eliminates any potential duty to defend
> a claim for pollution, including a "Combined Claim."
>
> "Combined Claim" means a claim that involves two types of
> pollution: pollution caused by a plane crash, fire, explosion,
> collision, or in-flight emergency (covered, subject to all the terms of
> the policy) and pollution not caused by such an event (excluded).
>
> Accordingly, the Insurers have no duty to defend a "Combined
> Claim," but only an obligation to reimburse the Town for defense
> costs properly allocable to that portion of the Combined Claim

14

that is covered, subject to all other terms and provisions of the
policies.

Dkt. No. 27-34 at 3 (spacing added).  Therefore, the Insurers "invoke[ed] the Noise and Pollution

and Other Perils Exclusion as to the NYSDEC Claim . . . ."  *Id.*  Insurers stated that "[b]ecause the

NYSDEC Claim involves pollution or contamination, the Insurers have no duty to defend the

claim, but only a potential duty to reimburse the Town for defense fees and expenses and

damages, if any, properly allocable to pollution or contamination caused by a plane crash, fire,

explosion, collision, or in-flight emergency."  *Id.*  Insurers noted their understanding "that the

Town contends the PFAS contamination at the Adirondack Airport was caused in whole or in part

by a plane crash or crashes[,]" but that "[i]t is the Town's burden to prove that contamination was

caused by a plane crash, the portion of the contamination related to the crash, and the costs

associated with investigating and remediating that portion of the contamination."  *Id.*

Prior to their issuance of that letter, Insurers "paid approximately $1.5 million in defense

costs on behalf of the Town for the NYSDEC claim[.]"  Dkt. No. 32-3 at ¶ 79.  "No alleged

defense costs have been submitted to the Insurers for reimbursement."  *Id.* at ¶ 80.  The Town

avers "that no such defense costs have been submitted because [the] Town has directed" its

environmental consultant "to suspend all activities relating to the NYSDEC Claim due to lack

funding as a result of Insurers' [] position."  *Id.*

### III. DISCUSSION

**A.**    **Standard of Review**

####  *1. Summary Judgment Standard*

"The entry of summary judgment is warranted when 'the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

15

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Doane v. United States*, 369 F. Supp. 3d 422, 438 (N.D.N.Y. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also* FED. R. CIV. P. 56(a).  "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jennings v. Decker*, 359 F. Supp. 3d 196, 204 (N.D.N.Y. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Doane*, 369 F. Supp. 3d at 438; *Kenney v. Clay*, 172 F. Supp. 3d 628, 635 (N.D.N.Y. 2016).

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)). However, irrelevant or unnecessary factual disputes do not preclude summary judgment.  *See Anderson*, 477 U.S. at 248.  Only genuine disputes about a material fact, such that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" will preclude summary judgment.  *Id.*

The party moving for summary judgment "bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim."  *Doane*, 369 F. Supp. 3d at 438.  If the moving party establishes a prima facie basis for summary judgment and satisfies their burden, the burden then shifts to the nonmoving party, who must then "show, through affidavits or otherwise, that there is a material issue of fact for trial" that a reasonable jury could resolve in its favor.  *Id.*; *see also Kenny*, 172 F. Supp. 3d at 635.  Evidence that is not significantly probative, or "the mere existence of some alleged factual dispute between the parties[,] will not defeat an otherwise properly supported motion for summary

16

judgment." *Kenny*, 172 F. Supp. 3d at 635-36 (quoting *Anderson*, 477 U.S. at 247-48); *see also Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) ("Genuine issues of fact are not created by conclusory allegations").  The nonmoving party must show by more than a "scintilla of evidence" that "a fact-finder could reasonably find for the non-movant." *Heublein*, 996 F.2d at 1461.  In determining the existence of any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Smith v. N.Y.S. Off. of Temp. & Disability Assistance*, 535 F. Supp. 3d 90, 94 (N.D.N.Y. 2021) (quoting *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017)); *see also Jeffreys*, 426 F.3d at 553.

"'Where, as here, the parties have cross-moved for summary judgment, a reviewing court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Goodall v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:19-CV-1359, 2024 WL 1288511, *9 (N.D.N.Y. Mar. 26, 2024) (quoting *United States v. Bedi*, 453 F. Supp. 3d 563, 570 (N.D.N.Y. 2020), *rev'd and remanded on other grounds by United States v. Bedi*, 15 F.4th 222 (2d Cir. 2021)).  "'In undertaking this analysis, it bears noting that a district court is not required to grant judgment as a matter of law for one side or the other.'" *Id.* (quotation omitted).

**B.    Insurer's Duty to Defend**

   *1. Parties' Arguments*

   Insurers move for summary judgment, seeking a declaratory judgment stating that "[p]ursuant to the unambiguous provisions of the Noise and pollution and other perils exclusion, (i) the NYSDEC claim is, at most, a 'Combined Claim' within the meaning of the Policies; and (ii) under the clear and unambiguous terms of the Exclusion and its Combined Claims provision, the

Insurers do not have a 'duty to defend' . . . . the Town . . . ." Dkt. No. 27-2 at 31. Insurers contend the Pollution "Exclusion unambiguously states that the Policies do not cover 'claims directly or indirectly occasioned by, happening through or in consequence of' 'pollution and contamination of any kind whatsoever'—a bar to coverage for the alleged contamination at issue." Dkt. No. 27-2 at 7. They note, "[h]owever, [that] the Exclusion has a narrowly tailored exception for contamination 'caused by or resulting in' a 'crash fire explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation' . . . ." *Id.* It is Insurers position that "[w]here the contamination at issue involves both covered and uncovered causes, the Exclusion states that" they do not have a duty to defend. *Id.* at 7-8. Therefore, as applied to this case, they assert that "[t]he NYSDEC claim involves PFAS contamination that reportedly arose from multiple causes, some of which are plainly not within the Exclusion's exceptions. Thus, the NYSDEC claim is, at most, a Combined Claim for which the Insurers owe no traditional duty to defend but only a potential duty to reimburse defense costs . . . ." *Id.* at 8.

The Town does not dispute the language of the Policies, but argues that the "Combined Claims" provision is inapplicable to the NYSDEC claim and because plane crashes are "*a* source" of the contamination at the Airport, then "the 'crash fire explosion' exception to the pollution exclusion applies to the NYSDEC Claim and Insurers' duty to defend, which includes payment of investigation costs, has been triggered." Dkt. No. 32-1 at 18-19.

In sum, both parties argue the Polices are unambiguous, but that the language means different things. It is also undisputed that the contamination at the Airport likely occurred because of the Town storing AFFF at the airport, using it for training purposes, *and* using it in response to airplane crashes. Therefore, the Court is tasked with determining the meaning of the

"Combined Claims" provision within the Pollution Exclusion and its applicability to the NYSDEC claim.

### 2. Common Interest Agreement

As an initial matter, the Town asks the Court to strike the Common Interest Agreement from the record or not to consider it in deciding the pending motions. *See* Dkt. No. 32-1 at 30. To argue that Insurers reliance on the Agreement is inappropriate, the Town quotes from two provisions in the Agreement which state, *inter alia*, that "[t]his Agreement shall not be used in any court or dispute resolution proceeding to create, prove, or interpret any rights or obligations under any insurance policies and/or otherwise" and "[t]he Parties agree that no part of this Agreement may be used in any proceeding as evidence of their respective rights, duties or obligations under the ACE Policies and/or any other policy of insurance." *Id.* at 28 (quotation omitted). As explained by Insurers in their reply, the Town omits reference to another sentence in the Agreement which states that "[n]othing in this Paragraph, however, shall be construed to prevent any Party from using this Agreement in any court or dispute resolution proceeding in an action to enforce rights and/or seek remedies under this Agreement." Dkt. No. 31 at 11; *see also* Dkt. No. 34 at 26.

In its cross-motion, the Town argues that Insurers waived their right to rely on the "Combined Claims" provision because Insurers did not utilize that provision to deny the duty to defend until three years after the Town informed Insurers of the NYSDEC claim. *See* Dkt. No. 32-1 at 25. Insurers rely on the Agreement to support their argument that they did not waive their rights to challenge the duty to defend the Town. *See* Dkt. No. 27-2 at 15, 29. They do not appear to be using the Agreement as evidence to explain or prove a duty to defend or lack thereof. Because they are not using the Agreement "to create, prove, or interpret any rights or obligations

under any insurance policies," the Court will not strike it from the record.  Dkt. No. 31 at 11.

### 3. Interpretation of the Policies

"Insurance policies 'are interpreted according to general rules of contract interpretation.'"

*Allstate Ins. Co. v. Vitality Physicians Group Practice P.C.*, 537 F. Supp. 3d 533, 548 (S.D.N.Y.

2021) (quoting *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012)).[2]  "Courts

'may not frustrate the intentions of the parties by altering the contract's terms or by reading into

the contract meanings not contemplated by the parties.  Instead, [courts] give the words of the

agreement their ordinary and plain meaning.'"  *Id.* (quoting *Jakobson Shipyard, Inc. v. Aetna Cas.

& Sur. Co.*, 961 F.2d 387, 389 (2d Cir. 1992)).  "An insurance policy 'must be construed to

effectuate the intent of the parties as derived from the plain meaning of the policy's terms.'"  *Id.*

(quoting *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir.

1999)).  "'Insurance policies are read in light of common speech and the reasonable expectations

of a businessperson.'"  *Id.* (quoting *United Nat'l Ins. Co. v. Granoff, Walker & Forlenza, P.C.*, 598

F. Supp. 2d 540, 546 (S.D.N.Y. 2009)).

"[T]he Court's analysis properly starts with the four corners of the Policy to determine if

there is any ambiguity." *Porco v. Lexington Ins. Co.*, 679 F. Supp. 2d 432, 435 (S.D.N.Y. 2009)

(citing *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003)).  The Second

Circuit has defined ambiguity in insurance policy language as follows:

> [A]n ambiguity exists where the terms of an insurance contract
> could suggest more than one meaning when viewed objectively by a
> reasonably intelligent person who has examined the context of the
> entire integrated agreement and who is cognizant of the customs,
> practices, usages and terminology as generally understood in the
> particular trade or business.

---

[2] The parties agree that New York law applies.  *See* Dkt. No. 27-2 at 19; Dkt. No. 32-1 at 16.

*Duane Reade, Inc. v. St. Paul Fire and Mar. Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005) (quoting

*Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)).

"'Unambiguous provisions' in [an] agreement are interpreted according to their 'plain and

ordinary meaning.'" *Id.* (quoting *Lavanant v. Gen. Accident Ins. Co. of Am.*, 79 N.Y.2d 623, 629

(1992)). If a provision is unambiguous, "courts are to enforce [it] as written." *Parks Real Estate*

*Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). On the other

hand, where insurance contract terms are ambiguous, "summary judgment is [generally]

inappropriate." *Albany Airport HIE, LLC v. Hanover Ins. Group, Inc.,* 391 F. Supp. 3d 193, 197

(N.D.N.Y. 2019) (citing *Liberty Mutual Ins. Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 642

(S.D.N.Y. 2016)). "Ambiguities are generally resolved in the insured's favor." *Dalton v.*

*Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009). !

### a. The "Combined Claims" Provision is Unambiguous

The Town argues that the language of the "Combined Claims" provision unambiguously

requires the existence of two or more claims in order for it to apply. *See* Dkt. No. 32-1 at 20.

The Town also contends that, because there is only one claim involved in this case, the

"Combined Claims" provision does not apply, and Insurers have a duty to defend the Town. *See*

*id.* at 16. Insurers assert that the language in the Pollution Exclusion delineates between covered

and uncovered claims based on the *cause* of the pollution, and that the "Combined Claims"

language must be construed as applying to "a claim or claims . . . that include a combination of

contamination" resulting from both covered and uncovered *causes*. Dkt. No. 27-2 at 24.

Accordingly, Insurers aver they do not have a duty to defend the Town as the contamination did

not result exclusively from covered causes. *See id.* at 26. As such, they argue they will possibly

have only a duty to reimburse the Town in the event the Town proves any part of the pollution at issue resulted from a covered cause. *See id.*

The fact that parties present differing interpretations of contract language does not itself render contract language ambiguous. *See Law Deb. Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("The court should not find the contract ambiguous where the interpretation urged by one party would 'strain [ ] the contract language beyond its reasonable and ordinary meaning'") (quoting *Bethlehem Steel Co. v. Turner Construction Co.,* 2 N.Y.2d 456, 459 (1957)). An interpretation that would "render provisions of a contract superfluous" is disfavored in the Second Circuit. *Intl. Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) (citing *Scholastic, Inc. v. Harris*, 259 F.3d 73, 83 (2d Cir. 2001)).

To identify the plain meaning of a contract term, New York courts commonly look to dictionary definitions. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,* 127 F. Supp. 3d 156, 171 (S.D.N.Y. 2015) (citing *Mazzola v. Cnty. of Suffolk,* 143 A.D.2d 734, 735 (2d Dep't 1988)); *see also Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 567 (2d Cir. 2011) ("[I]t is common practice for the courts of [New York] State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract") (quoting *10 Ellicot Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011)).

The first issue is whether the term "combined" is ambiguous within the "Combined Claims" language of the Pollution Exclusion. Under the Town's interpretation, a "Combined Claim" under the Policies must include more than one claim, and Insurers' repeated reference to the "NYSDEC Claim" in singular form, constitutes an admission that the Town's contamination issue consists of one claim, which cannot be a "Combined Claim." Dkt. No. 32-1 at 20. The Court notes that within the communications between Insurers and the Town, as well as the

statements of material facts and responses thereto that have been submitted to this Court, Insurers refer to the NYSDEC claim as a singular claim on every single occasion, but once. *See* Dkt. No. 27-20 at 7.

Insurers take issue with Town's "hyper-technical spin" on the language of the "Combined Claims" paragraphs, *see* Dkt. No. 34 at 9, and argue that the "Combined Claims" paragraphs refer to a situation "when a claim or claims are asserted that include a *combination* of contamination *caused by* a crash, fire, explosion, collision, etc. and contamination from non-covered *causes*." Dkt. No. 27-2 at 24.  Insurers argue the Town's interpretation of the Policies' "Combined Claims" language and accompanying hypothetical examples of its application are "unavailing."  *See* Dkt. No. 34 at 13.

Merriam-Webster defines "combine" as "to bring into such close relationship as to obscure individual characters," and "to act together."  *Combine*, Merriam-Webster, https://www.merriam-webster.com/dictionary/combine (last visited July 31, 2025); *see also Combined*, The Britanica Dictionary, https://www.britannica.com/dictionary/combined (last visited Aug. 4, 2025) (defining "combined" as "formed or produced by adding two or more things or amounts together"); *Combined*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/combined (last visited Aug. 4, 2025) (defining "combined" as "consisting of two or more different things joined together").  Each of these definitions plainly references more than one thing.  In other words, one thing cannot combine with itself.

Within the Pollution Exclusion, "Combined Claims" is defined as "a claim or claims covered by the policy when *combined with* any claims excluded by Paragraph 1 [of the Pollution exclusion]."  Dkt. No. 27-3 at 21 (emphasis added).  Therefore, a "Combined Claim" is a covered

claim *combined with* an uncovered claim.  *See id.*  A single claim cannot be a "combined claim"; the provision unambiguously refers to a situation where a claim that would be excluded by the Pollution Exclusion is brought *with* another claim that would be covered by the Policies.

Insurers do not sincerely dispute this.  In their briefs, Insurers agree that the "Combined Claims" provision requires more than one thing.  The Town asserts that the provision requires more than one "claim"; whereas Insurers argue the provision requires more than one cause of pollution underlying a claim.  *See* Dkt. No. 32-1 at 20; Dkt. No. 27-2 at 23-24.  Therefore, the Court must determine whether the term "claim" is ambiguous as it is used within the Policies.

The term "claim" is not defined in the Policies.  *See generally* Dkt. No. 27-3.  However, a term's lack of express definition within an insurance contract does not automatically create ambiguity.  *See Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 176 (S.D.N.Y. 2020) (citing *Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 136 A.D.3d 52, 56 (1st Dep't 2015)).  "Courts must 'give effect to the intent of the parties as expressed in the clear language of the contract.'"  *Michael Cetta*, 506 F. Supp. 3d at 175 (quoting *Parks Real Estate*, 472 F.3d at 42).  "When interpreting a state law contract, therefore, an established definition provided by state law or industry usage will serve as a default rule, and that definition will control unless the parties explicitly indicate, on the face of their agreement, that the term is to have some other meaning." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 617-18 (2d Cir. 2001) (citing *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F. Supp. 987, 994 (S.D.N.Y. 1968)).

Black's Law Dictionary defines "claim" as

> 1. A statement that something yet to be proved is true . . . [;]
>
> 2. The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional . . . [;]

> 3. A demand for money, property, or a legal remedy to which one
> asserts a right; esp., the part of a complaint in a civil action
> specifying what relief the plaintiff asks for . . . [;] [and]
>
> 4. An interest or remedy recognized at law; the means by which a
> person can obtain a privilege, possession, or enjoyment of a right or
> thing[.]

*Claim*, Black's Law Dictionary (12th ed. 2024) (spacing added).[3]

In the insurance context, the Second Circuit has defined "claim," stating that "under New York law . . . the 'ordinary meaning' of claim is 'an assertion by a third party that in the opinion of that party the insured may be liable to it for damages [which are] within the risks covered by the policy.'" *Andy Warhol*, 189 F.3d at 215 (quoting *Am. Ins. Co. v. Fairchild Indus. Inc.*, 56 F.3d 435, 439 (2d Cir. 1995)); *see also Home Ins. Co. Of Illinois (New Hampshire) v. Spectrum Info. Tech., Inc.*, 930 F. Supp. 825, 846 (E.D.N.Y. 1996) ("Courts have found that the term 'claim' as used in liability insurance policies is unambiguous and generally means a demand by a third party against the insured for money damages or other relief owed") (collecting cases). The Second Circuit has also recognized that under New York law, a claim "must relate to an assertion of legally cognizable damage, and must be a type of demand that can be defended, settled and paid by the insurer." *Am. Ins. Co.*, 56 F.3d at 439.

Defendants argue that the case law definition of "claim" is inapplicable to this action because it has been used by courts to define when a "claim" accrues to determine an insured's compliance with notice requirements, rather than to aid in interpretation of a pollution exclusion. *See* Dkt. No. 34 at 12 n.4. Defendants are correct that the cases cited by the Court do not concern a pollution exclusion. However, throughout Defendants' Policies, and not just in relation to the

---

[3] Neither party provides the Court with dictionary definitions of the term "claim" despite it being a "common practice" for courts to turn to such in contract interpretation cases. *Fed. Ins. Co.*, 639 F.3d at 567; *see* Dkt. Nos. 27-2, 32-1, 34.

Pollution Exclusion, the term "claim" or "claims" is used in a manner consistent with the definition utilized by courts in the Second Circuit.  The Second Circuit has recognized that a "contract should be read as a whole, with every part interpreted with reference to the whole." *Flynn*, 120 F.4th at 1165 (quoting *Williams Press, Inc. v. New York*, 37 N.Y.2d 434, 430 (1975)) (internal quotation marks omitted).

For example, the paragraph within the Pollution Exclusion that discusses "Combined Claims" refers to "any provision in the policy concerning our duty to investigate or defend claims."  Dkt. No. 27-3 at 21; *see also id.* at 12 ("We may at our discretion investigate any offense and settle any claim or "suit" that may result).  Throughout the Policies, Insurers often reference "a claim or suit." *Id.* at 12, 16, 18-20, 25-27, 36.  The policies discuss settling, investigating, and defending "any claim or 'suit.'" *Id.* at 12, 16, 20.  Merriam-Webster dictionary defines "or" as a "conjunction used as a function word to indicate an alternative," and "used in logic as a sentential connective that forms a complex sentence which is true when at least one of its constituent sentences is true."  *Or*, Merriam-Webster, https://www.merriam-webster.com/dictionary/combine (last visited Aug. 13, 2025).  The Policies define "suit" as follows:

> "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
> a.    An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or
>
> b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

*Id.* at 32-33.  NYSDEC did not bring a "suit" against the Town by sending the Town the PRP letter and Notice because neither document constitutes a "civil proceeding."  *Id.*  Based on the foregoing, the Court understands the Policies to mean that a "claim" is an assertion or statement of a right brought against an insured in a format other than "a civil proceeding" for which Insurers may investigate, settle, and/or defend.

Insurers argue that "[t]he Town [] argues at length that the Insurers are equating 'claim' with 'cause.' . . . [T]his is wrong."  Dkt. No. 34 at 12.  Insurers do not then define "claim," but argue that they "clearly argued in their moving brief, the NYSDEC Claim is at most a Combined Claim because it involves uncovered and potentially covered pollution. . . .  The difference between 'uncovered' and 'potentially covered' is determined by the *cause* of the pollution (*i.e.,* whether the pollution was caused by one of the five types of airport emergencies in the exception)."  *Id.* (citation and footnote omitted) (emphasis added).  Insurers' argument is untenable.  They argue that they are not equating "claim" with "cause," but proceed to define "combined claim" based on "the *cause* of pollution."  *Id.* (emphasis added).  The Pollution Exclusion, as written, does not differentiate between potential causes underlying a claim, but refers to "a claim . . . covered by the policy" and "a[] claim[] excluded by" the Pollution Exclusion.  Dkt. No. 27-3 at 21.  Likewise, the Black's Law Dictionary definitions of "claim" do not differentiate between the reasons underlying "a statement that something yet to be proved is true," or " the assertion of an existing right."  *Claim*, Black's Law Dictionary (12th ed. 2024).  Rather, a "claim" is a singular statement or assertion "by a third party that in the opinion of that party the insured may be liable to [the third party] for damages [which are] within the risks covered by the policy.'"  *Andy Warhol*, 189 F.3d at 215

In reviewing insurance policies, courts regularly encounter what is referred to as an "'anti-concurrent cause' provision which bars coverage where a claimed loss is *caused* by a combination of covered and excluded perils." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 446 (S.D.N.Y. 2015) (emphasis added); *Alamia v. Nationwide Mut. Fire Ins. Co.*, 495 F. Supp. 2d 362, 367 (S.D.N.Y. 2007) (discussing an anti-concurrent cause provision that, in pertinent part, stated as follows: "We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss"); *Kula v. State Farm Fire & Cas. Co.*, 212 A.D.2d 16, 17 (4th Dep't 1995) (discussing anti-concurrent clause that provided as follows: "[w]e do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss").

For example, where an insurance policy stated that "[t]his policy does not insure against loss or damage caused by, resulting from, contributed to or aggravated by," the court explained that "New York courts have interpreted similar clauses to mean that where a loss results from multiple contributing causes, coverage is excluded if the insurer can demonstrate that *any* of the concurrent or contributing causes of loss are excluded by the policy." *ABI Asset Corp. v. Twin City Fire Ins. Co.*, No. 96-CV-2067, 1997 WL 724568, *2 (S.D.N.Y. Nov. 18, 1997) (citing *Casey v. General Acc. Ins. Co.*, 178 A.D.2d 1001, 1002 (4th Dep't 1991); *Reynolds v. Stanford Fire Ins. Co.*, 221 A.D.2d 616, 616-17 (2d Dep't 1995)).

Here, the Policies contain similar language. The Pollution Exclusion states that the Policies do "not cover claims directly or indirectly occasioned by, happening through or in

28

consequence of" "pollution and contamination of any kind whatsoever." Dkt. No. 32-3 at ¶ 10. However, as Insurers acknowledge, the Exclusion "carves out the five types of airport events that come within the exception: a crash, fire, explosion, collision, or an in-flight emergency causing abnormal aircraft operation." Dkt. No. 27-2 at 21. Specifically, the Policies state that "claims directly or indirectly occasioned by, happening through or in consequence of" "pollution and contamination" are excluded "unless caused by or resulting in a crash fire explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation." Dkt. No. 32-3 at ¶ 10. The exception does not state that is applies only if the pollution is caused "in part by" or "aggravated by" or "contributed to by" a crash or explosion. It states only that the Policies will still apply if the contamination or pollution was "caused by or resulting in" one of the five events. *Id.* Insurers argue that "the Exclusion plainly provides that there is *no* coverage under the Policies for *any* contamination at the Site *except that* caused by or resulting in a crash, fire, explosion, collision, or in-flight emergency." Dkt. No. 27-2 at 22 (emphasis added). The Policy does not state that only that portion of a claim which is caused by an enumerated exception will give rise to a duty to defend. *See* Dkt. No. 27-3 at 21. It states only that a pollution claim will not give rise to Insures' to duty to defend "unless caused by or resulting in a crash fire explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation." *Id.* There is no apportionment of the percentage of a claim which must be caused by one of the exceptions to give rise to a duty to defend or reimburse.

Insurers contend that "[a]lthough decisions applying the 'Noise and pollution and other perils' exclusion are not as ubiquitous as those applying the 'sudden and accidental' pollution exclusion, courts have recognized that the exclusion is clear and unambiguous." *Id.* at 21 (citing *Metro. Dade Cnty. v. Aviation Off. of Am.*, 2004 Fla. Cir. LEXIS 1144, at *4-5 (Fla. Cir. Ct., July

15, 2004); *Lubbock County Hosp. Dist. v. National Union Fire Ins. Co.*, 143 F.3d 239, 241-42 (5th Cir. 1998)).

First, the cases relied on by Insurers are not applying New York law and are not from the Second Circuit.  Nevertheless, the Florida case concerns an identical "Noise and Pollution and Other Perils Exclusion Clause" as the one at issue in this case.  *See Metro. Dade*, 2004 Fla. Cir. LEXIS 1144, at *4.  The court concluded that the provision was unambiguous.  *See id.* at *5. Here, the Court agrees that the policy language is unambiguous.  In that case, the court concluded that "issues of fact remain as to whether [five specific] incidents . . . listed by the County in its Closing Statement fall within the "collision" exception to the Defendants pollution exclusion," which came from the fifteen stipulated "specific events or conditions" underlying "the County's *claims* to damages."  *Id.* at *1, *5 (emphasis added).  Here, there is only one claim—the NYSDEC claim.  Insurers do not provide any details about the Florida case beyond what is in that court's opinion; therefore, the Court cannot be certain whether the unambiguous policy language was applied in a similar circumstance to the one presented in this case regarding one claim with multiple underlying causes.  *See* Dkt. No. 27-2 at 21.

Third, the Fifth Circuit case cited by Insurers is even less persuasive.  In that case, it was undisputed that none of the pollution was caused by a crash, fire, explosion, or collision.  *See Lubbock Cnty.*, 143 F.3d 242.  It was not a situation of multiple potential causes for the purported pollution—the case concerned only "a 1000–gallon fuel spill."  *Id.* at 241.  Because there was no question about the cause of the pollution in that case, its use of the pollution exclusion language is not helpful to the Court's determination in this case.

The "Combined Claims" provision unambiguously requires "a claim or claims covered by the policy *when combined with* any claims excluded by Paragraph 1."  Dkt. No. 27-3 at 21

(emphasis added). Insurers assert that "[u]nder Paragraph '1,' what distinguishes a *claim* 'covered by the policy' from a *claim* 'excluded' by the policy is the *cause* of the contamination." Dkt. No. 27-2 at 24. The Court agrees— a claim brought because of pollution of "any kind whatsoever" other than that resulting from or caused by an explosion, collision, or emergency, is excluded from coverage. Dkt. No. 27-3 at 21. However, the Pollution Exclusion does not state that a single claim will be excluded if any portion of the causation for that single claim stems from different forms of pollution. The plain language in the Policies requires more than one claim: not more than one cause underlying a claim. If Insurers wished to make their policy language exclude a duty to defend any single claim which contains allegations of an uncovered *cause* of harm, they could have expressly done so in the Policies. Therefore, the Court concludes that the "Combined Claims" language is unambiguous in favor of the Town's interpretation.

When reviewing the language "objectively," the Court finds that no "reasonably intelligent person" could conclude that the "Combined Claims provision" which refers to "a claim or claims covered by the policy when combined with any claims excluded by Paragraph 1," means a single claim with multiple underlying causes. *Duane Reade*, 411 F.3d at 390. While "claim" is not expressly defined within the Policies, it is used in a way that does not run contrary to the well-established definition used by courts in insurance cases in the Second Circuit. Insurers do not present a "reasonable basis for a difference of opinion." *Flynn*, 120 F.4th at 1165 (citing *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019). Therefore, the term "claim" is unambiguous as used in the Policies. For Insurers to disclaim their duty to defend based on the "Combined Claims" provision, there must have been more than one "'assertion by a third party that . . . the

insured may be liable to it for damages.'" *Andy Warhol Found.*, 189 F.3d at 215 (quoting

*American Ins. Co.*, 56 F.3d at 439).[4]

### 4. Whether the "Combined Claims" provision applies to the NYSDEC Claim

The next issue is whether, using the plain meaning of the "Combined Claims" language,

the provision applies to the NYSDEC Claim.  In November 2020, the Town received the PRP

letter from NYSDEC regarding contamination at the Airport.  *See* Dkt. No. 32-3 at ¶ 13.  The

letter informed the Town that the Airport "presents a significant threat to public health and/or the

environment."  Dkt. No. 27-6 at 2.  The letter stated that the Town was allegedly responsible for

the contamination at the Airport and requested the Town "implement or finance a remedial

program in connection with the contamination at or emanating from the site."  *Id.* at ¶¶ 16-17.

The letter informed the Town that if it did not enter into a Consent Order to memorialize its

agreement to comply with NYSDEC's remediation request, the State may undertake the

remediation efforts itself and resulting costs would be "recoverable by the State from the

responsible parties."  Dkt. No. 27-5 at 3.

"The Second Circuit [has] held that an administrative letter is the functional equivalent of

a suit if it goes beyond asking for voluntary participation and negotiation to demand that the

insured take action or face actual lawsuits and possible sanctions."  *Borg-Warner Corp. v. Ins. Co.*

*Of N. Am.*, 174 A.D.2d 24, 35 (3d Dep't 1992) (citing *Avondale Indus. v. Travelers Indem. Co.*,

887 F.2d 1200, 1206 (2d Cir. 1989)).  Applying New York law, the First Circuit utilized a number

---

[4] Even if the Court were to conclude that the contract terms were ambiguous, "[a]mbiguities are
generally resolved in the insured's favor."  *Dalton*, 557 F.3d at 90; *see also Ezrasons, Inc. v.*
*Travelers Indem. Co.*, 89 F.4th 388, 402 (2d Cir. 2023) ("When a contract of insurance is
ambiguous and the evidence furnishes no basis for resolving the ambiguity, New York law
provides that the court's decision must favor the insured over the insurer as long as the insured's
interpretation is reasonable") (collecting cases).  Therefore, whether the Policies' language is
ambiguous or unambiguous, the Court favor's the Town's interpretation.

of factors to determine whether the duty to defend was triggered without the filing of a formal

complaint against an insured, explaining as follows:

> To sum up, the origins and purpose of the duty to defend seem best
> accommodated neither by a restrictive suit-cum-judgment rule nor
> by an expansive "any contact with a government agency is enough"
> rule, but by focusing instead on the data most relevant to the
> probability of actual toxic waste liability: coerciveness,
> adversariness, the seriousness of the effort with which the
> government hounds an insured, and the gravity of imminent
> consequences.  Since the law holds PRPs to so strict a liability
> standard, the degree of compulsion the government wields in
> pursuing an insured seems an apt proxy for measuring factual
> expectancy according to the actual probability and immediacy of
> toxic waste liability.

*Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731, 741 (1st Cir. 1990) (citing *Liberty Mut. Ins. Co. v.*

*Continental Cas. Co.*, 771 F.2d 579, 585 (1st Cir. 1985)); *see also Johnson Controls, Inc. v.*

*Emps. Ins. of Wausau*, 665 N.W.2d 257, 264 (Wis. 2003) (concluding that a "[a] PRP letter under

the [Comprehensive Environmental Response Compensation and Liability Act] significantly

affects legal interests of the insured.  Therefore, a reasonable insured would expect this letter to

trigger its [] insurer's duty to defend").

Here, Insurers concede that "[o]nce the NYSDEC designated the Site a Class 2 Inactive

Hazardous Waste Site in 2020, the Town was strictly liable to conduct investigation and

remediation of the Site and had no choice but to sign the Consent Order—with or without insurer

authority."  Dkt. No. 34-1 at ¶ 56.  Insurers also characterize the remediation request as the

"NYSDEC claim."  Dkt. No. 32-3 at ¶¶ 17, 31. The PRP letter "requested" the Town to implement

remediation measures, but it also notified the Town that if it did not sign a Consent Order within

120 days, NYSDEC would begin remediation measures and costs would "be recoverable by the

State from the responsible parties."  Dkt. No. 27-5 at 3.  Accordingly, the PRP letter is sufficiently

adversarial to constitute a "claim" or "suit" against the Town. *Avondale Indus., Inc.*, 887 F.2d at 1206.

Within Insurers' communications with the Town regarding the PRP letter, the remediation request is frequently referred to as a single claim. *See* Dkt. No. 27-17 at 8 ("I have attached our acknowledgement letter for the above-referenced claim by the NYDEC"); Dkt. No. 27-20 at 2 ("We acknowledged the above-referenced claim"). While Insurers object to the argument that their use of singular language surrounding the "NYSDEC Claim" constitutes conclusive evidence that there is only one claim, Dkt. No. 34 at 9, Insurers do not contend that NYSDEC brought more than one claim. They argue only that there are different causes underlying the claim. *See* Dkt. No. 27-2 at 24. NYSDEC notified the Town in the PRP Letter that the Town was potentially liable for the contamination, without distinguishing between various sites or causes of contamination. *See generally* Dkt. No. 27-5. Accordingly, the PRP letter constitutes a single claim, and the "Combined Claims" provision does not apply.

### 5. Duty to Defend

New York law recognizes that an insurer's duty to defend an insured is "exceedingly broad." *CONMED Corp. v. Fed. Ins. Co.*, 590 F. Supp. 3d 463, 469 (N.D.N.Y. 2022) (quoting *Cent. Mut. Ins. Co. v. Willig*, 29 F. Supp. 3d 112, 118 (N.D.N.Y. 2014)). Under New York law, "[i]t is well settled that an insurance company's duty to defend is broader than its duty to indemnify." *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006). A "contractual duty to defend exists and per[sists] until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss*, 252 F.3d at 620. The Second Circuit recognizes "at least three kinds of uncertainty that can give rise to such a duty to defend:"

The first is factual: did the injury occur in a time, place, or way that

> is covered by the policy?
>
> The second is legal: will the cases governing the insurance policy be read to impose coverage in a given situation?
>
> The third arises from the existence of *contra proferentem:* will the terms of the contract of insurance be deemed to give rise to an ambiguity that must be read against the insurer or will they be held to be clear enough to avoid the presumption?

*Id.* (spacing added). "Each of these uncertainties will ultimately be resolved by courts or juries—and often in favor of the insurer, thereby precluding coverage and the duty to indemnify. But until they are, the insurer cannot avoid its duty to defend." *Id.* (spacing added).

When a lawsuit is brought against an insured, New York law provides that "the duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.'" *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997) (quoting *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65-67 (1991)); *see also Allstate Ins.*, 537 F. Supp. 3d at 547. To be free of the duty to defend based on the applicability of policy exclusions, an insurer must "demonstrate that the allegations of an underlying complaint place that pleading solely and entirely within the exclusions of the policy and that the allegations are subject to no other interpretation." *Hanover Ins. Co. v. Cowan*, 172 A.D.2d 490, 491 (2d Dep't 1991) (citing *Allstate Ins. Co. v. Noorhassan,* 158 A.D.2d 638, 640 (2d Dep't 1990)); *see also Village of Piermont v. Am. Alternative Ins. Corp.*, 151 F. Supp. 3d 438, 448 (S.D.N.Y. 2015) ("When an exclusion clause is relied upon to deny coverage, the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage") (cleaned up). If the insurer meets this burden, "the burden shifts to the insured to demonstrate a

reasonable interpretation of the underlying complaint potentially bringing the claims within the . . . exception to exclusion of pollution coverage, or to show that extrinsic evidence exists that the [exception applies]." *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 621, 634 (1997).

When the allegations of the underlying complaint are vague and silent regarding facts that could trigger coverage, some courts have taken the allegations' imprecision to leave open the possibility of coverage.  For example, one court from the District of Connecticut explained as follows:

> Because the Letter is couched in general terms, and is silent as to the nature of the polluting releases, whether abrupt or slow, short term or long term, expected or unexpected, intentional or unintentional, it allows for the possibility that the pollution referred to occurred both suddenly and accidentally—and therefore that it was covered by the policies.

*EDO Corp. v. Newark Ins. Co.*, 898 F. Supp. 952, 961 (D. Conn. 1995) (applying New York and Connecticut law); *see also Emps. Ins, of Wasau v. Duplan Corp.*, 899 F. Supp. 1112, 1118 (S.D.N.Y. 1995) ("[U]nder New York law if the third-party complaint's allegations give rise to the possibility of a sudden and accidental discharge of pollution, the insurer is bound to defend. . . . The broadly-worded complaint alleged no non-'sudden and accidental' event, thereby failing to negate the possibility of a covered occurrence").  Additionally,

> New York courts have made clear that "[w]ooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify — clearly an unacceptable result" and "[f]or that reason, courts and commentators have indicated that the insurer must provide a defense if it has knowledge of facts which potentially bring the claim within the policy's indemnity coverage[.]"

*Travelers Prop. Cas. Co. Of Am. v. Harleysville Worcester Ins. Co.*, 685 F. Supp. 3d 187, 207

(S.D.N.Y. 2023) (quoting *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 66 (1991)).

Because the claim against the Town was initiated through NYSDEC's PRP letter, the Court will review the PRP letter for the purpose of determining whether the allegations within the PRP letter leave open the possibility of coverage. *See EDO Corp.*, 898 F. Supp. at 961 ("Moreover, in assessing whether the allegations of the underlying claim potentially fall within coverage, the insurer is precluded from looking beyond the four corners of the underlying complaint—or, in this case, the PRP letter"). The November 2020 PRP Letter did not explain the alleged causes of contamination or how, in the State's view, the Town may have contributed to it. *See generally* Dkt. No. 27-5. Instead, the PRP Letter contained a general assertion that "NYSDEC had 'documented a release of "hazardous substances". . . and/or the presence of "hazardous wastes" . . . at or near property identified as the Adirondack Regional Airport Site.'" Dkt. No. 32-3 at ¶ 14 (quoting Dkt. No. 27-5 at 2). This claim about contamination at the Airport does not foreclose the possibility that such contamination was the result of one of the enumerated exceptions to the Pollution Exclusion. *See* Dkt. No. 27-3 at 21. This conclusion is supported by NYSDEC's fact sheet from July 2022 which indicated that "[p]ast investigations in the area have determined that . . . PFAS[] are present in the site's subsurface from aqueous film-forming foam, which contained PFAS, *which may have been used in response to plane crashes*, for training and/or for other purposes." Dkt. No. 27-25 at 3 (emphasis added).

Insurers do not dispute that they were aware that at least one alleged source of contamination at the Airport is firefighting foam that was used in response to crashes or similar events, which raises a reasonable possibility that at least some of the contamination at the Airport resulted from a fire or other enumerated emergency listed in the exception. *See* Dkt. 27-3 at 21; *see also* Dkt. No. 32-3 at ¶ 24; Dkt. No. 27-2 at 26.

Based on the foregoing, the Town has met its burden of establishing a "reasonable interpretation of the underlying complaint potentially bringing the claims within the . . . exception." *Northville Indus. Corp.*, 89 N.Y.2d at 634; *see also Those Certain Underwriters at Lloyd's, London v. DVO, Inc.*, 473 F. Supp. 3d 236, 259 (W.D.N.Y. 2020) (finding that the insured had met its burden of showing the applicability of an exception when the underlying complaint did "not identify any specific cause of action and can be reasonably construed to allege claims of negligent design or breach of contract, both of which would fall within the exception"). As such, Insurers have a duty to defend the Town unless and until that possibility is foreclosed "with certainty." *Hugo Boss*, 252 F.3d at 620. The Insurers' motion is denied, and the Town's cross-motion is granted on this issue.[5]

## C.    Breach of Contract Claim

The Town alleges a breach of contract claim in its second cause of action in the amended complaint. *See* Dkt. No. 11 at ¶¶ 175-79. The Town contends Insurers breached their insurance contract by "[u]nreasonably refusing to defend [the] Town," misrepresenting the Policies' terms, failing to provide reasonable explanations for their denial of coverage, and forcing the Town to suffer financially by bearing the costs related to the NYSDEC claim. *Id.* at ¶ 178. Insurers, in a single paragraph, in their motion for summary judgment, argue that the breach of contract claim must be dismissed with prejudice because "[t]he Town's breach of contract claim

---

[5] As the Court grants Plaintiff's motion for summary judgment concerning the interpretation of the duty to defend provisions in the Policies, the Court declines to address Plaintiff's additional arguments regarding waiver, estoppel, and the "your product" clause. *See UpTempo Sports, LLC v. Benefit Coatings, Inc.*, 731 F. Supp. 3d 350, 358 n.3 (D. Conn. 2024) ("The Court declines to address the parties' jurisdictional and waiver arguments as it has decided Defendant's motion for summary judgment on other grounds"); *Roth v. Cnty. Of Nassau*, No. 15-CV-6358, 2018 WL 6539402, *7 n.4 (E.D.N.Y. Mar. 27, 2018).

fails because it is entirely premised on the Town's erroneous assertion that the Insurers have a duty to defend the NYSDEC claim." Dkt. No. 27-2 at 30. They do not brief any case law or otherwise address the merits of Plaintiff's breach of contract claim. *See id.*

The Town states in its one-paragraph conclusion of its cross-motion, that the Court should enter a declaratory judgment holding that Defendants "have breached the Policies by disclaiming on their duty to defend." Dkt. No. 31-1 at 30. In a footnote, the Town states that Insurers breached the contract by filing the Common Interest Agreement with the Court in an unredacted format, which is purportedly confidential, and "Insurers' filing of the Agreement is not the only way they breached it. The Agreement provides that several of the exhibits that Insurers filed with their Motion for Summary Judgment are confidential. Yet, Insurers filed those exhibits in unredacted form, breaching the terms of the Agreement." *Id.* at 29 n.6. The Town does not otherwise present any argument, case law, or discussion related to its breach of contract claim. Neither party addresses the breach of contract claim in their replies. *See* Dkt. Nos. 34, 37.

"To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 338 (N.D.N.Y. 2010). "As a result, '[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment.'" *Id.* (quoting *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968)); *see also Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211 (N.D.N.Y. 2008); *Hughes v. Butt*, No. 9:17-CV-1151, 2019 WL 6970794, at *8 (N.D.N.Y. Sept. 17, 2019).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure analyzes the legal sufficiency of a plaintiff's claim for relief.  *See* FED. R. CIV. P. 12(b)(6); *see also Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  A complaint must "'state a claim to relief that is plausible on its face' . . . [and] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*  A plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . .," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.* at 570.  Determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679-80.

Under New York law, a plaintiff alleging a breach of contract claim must allege the following elements: (i) the existence of a contract; (ii) adequate performance of the contract by the plaintiff; (iii) breach by the other party; and (iv) damages suffered as a result of the breach. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citation omitted); *see also Wolff v.*

*Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357-58 (S.D.N.Y. 2001) (citation omitted).  "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Wolff*, 171 F. Supp. 2d at 358 (citation omitted).  Moreover, "[g]enerally, a party alleging a breach of contract must 'demonstrate the existence of a . . . contract reflecting the terms and conditions of their . . . purported agreement.'" *Canzona v. Atanasio*, 118 A.D.3d 837, 839 (2d Dep't 2014) (quotations omitted).

"In order to adequately allege the existence of an agreement, 'a plaintiff must "plead the provisions of the contract upon which the claim is based."'" *Howell v. American Airlines, Inc.*, No. 05-CV-3628, 2006 WL 3681144, *3 (E.D.N.Y. Dec. 11, 2006) (quoting *Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05-CV-4837, 2006 WL 399396, *10 (S.D.N.Y. Feb. 21, 2006)) (additional quotations omitted).  "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim." *Id.* (citing *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, Nos. 91-CV-1816, 92-CV-5283, 1993 WL 312899, *3 (S.D.N.Y. Aug. 12, 1993)) (additional citation omitted).  "However, the complaint must at least 'set forth the terms of the agreement upon which liability is predicated . . . by express reference.'" *Id.* (quoting *Phoenix Four*, 2006 WL 399396, at *10; *Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.*, 129 A.D.2d 927, 928 (3d Dep't 1987)).  Further, in the context of insurance contracts, the "[a]pplicable provisions of the Insurance Law are 'deemed to [be] part of [an] insurance contract as though written into it.'" *Trizzano v. Allstate Ins. Co.*, 7 A.D.3d 783, 785 (2d Dep't 2004) (quotation and other citations omitted).

"[A] complaint fails to sufficiently plead the existence of a contract if it does not provide factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms.  Conclusory allegations that a contract existed or that it was breached

do not suffice.'" *Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 347-48 (S.D.N.Y. 2020), *aff'd*, No. 20-3344, 2022 WL 274507 (2d Cir. Jan. 31, 2022) (quotation and quotation marks omitted) (collecting cases); *see also Valley Lane Indus. Co. v. Victoria's Secret Direct Brand*, 455 Fed. Appx. 102, 104 (2d Cir. 2012).

It is Plaintiff's burden to allege "adequate performance of the contract by the plaintiff[.]" *Harsco Corp.*, 91 F.3d at 348. Plaintiff has not alleged the provisions in the Policies which forbid Insures from denying their duty to defend. Likewise, as explained, the Common Interest Agreement states that "[n]othing in this Paragraph, however, shall be construed to prevent any Party from using this Agreement in any court or dispute resolution proceeding in an action to enforce rights and/or seek remedies under this Agreement." Dkt. No. 27-21 at 12. Insurers' initial filing of the Agreement was heavily redacted, and Insurers filed the entirety of the Agreement under seal. *See* Dkt. Nos. 27-21, 31. Plaintiff has not provided any facts or legal argument concerning its breach of contract claim besides stating (1) its conclusory allegation in the amended complaint that Insurers breached the Policies by asserting no duty to defend Plaintiff; and (2) its conclusory argument in a footnote of its brief that Insurers inappropriately filed confidential information with the Court. *See* Dkt. No. 11 at ¶ 178; Dkt. No. 32-1 at 29 n.6. This is insufficient to state a breach of contract claim under New York law. Because Plaintiff's breach of contract claim is conclusory, it must be dismissed.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Plaintiff's cross-motion for summary judgment (Dkt. No. 32) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 27) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that the NYSDEC claim is not a "Combined Claim" within the meaning of the Policies; and the Court further

**ORDERS** that Insurers have a duty to defend the Town under the terms of the Policies unless and until such time as the Insurers can establish with certainty that the NYSDEC claim falls outside of an exception of the Pollution Exclusion clause; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment (1) in Plaintiff's favor as to the duty to defend claim and (2) in Defendants' favor as to the breach of contract claim and shall close the case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 18, 2025
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

43